IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,
Plaintiff,

v.                                                                          Case No. 01–CR–40017–JPG–11

DEREK A. WAITHE,
Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendant Derek A. Waithe's Motion for Compassionate Release. (ECF No. 653). For the reasons below, the Court **DENIES** Waithe's Motion.

## I.   PROCEDURAL & FACTUAL HISTORY

### A.  The Conviction

In 2001, a federal grand jury in this District indicted Waithe for distributing crack-cocaine. (*See* Second Superseding Indictment 1, ECF No. 187). He pleaded guilty the next year, (Minute Entry 1, ECF No. 276); and the Court sentenced him to a 420-month term of imprisonment and a five-year term of supervised release, (Judgment 2, ECF No. 304). In December 2020, the Court reduced that term of supervised release to four years because of a retroactive change in sentencing law. (Mem. & Order 6–7, ECF No. 655). Waithe is currently incarcerated at the Medical Center for Federal Prisoners in Springfield, Missouri ("MCFP Springfield"). (Waithe's Mot. for Compassionate Release at 4). His projected release date is June 17, 2029. *See Find an Inmate*, Federal Bureau of Prisons [hereinafter "BOP"] (last visited Feb. 10, 2021).[1]

---

[1] *Available at* https://www.bop.gov/inmateloc/.

### B.  The Presentence Investigation Report

Before sentencing, the Court considered the Presentence Investigation Report ("PSR") prepared by the U.S. Probation Office, which provided information about the nature and circumstances of the offense. (PSR 1, ECF No. 305).

According to the PSR, "Waithe was the leader of the organization called the 'Royal Family Cut Throats' who had an agreement among its members to, among other things, commit and unlawful act—selling powder and crack cocaine in the Mt. Vernon, Illinois area." (*Id.* at 6). "All of the members of the 'Royal Family' were also members of the street gang 'Gangster Disciples.' Several members of the 'Royal Family' have been known to carry handguns, including Derek Waithe . . . ." (*Id.* at 9). As the leader of the Royal Family, Waithe "would purchase crack cocaine and powder cocaine in two-ounce to two-kilograms quantities" across the country. (*Id.* at 9). He would then front or sell the drugs to other members. (*Id.* at 10). He also introduced others "to the methods of distributing crack-cocaine." (*See id.*).

### C.  Waithe's Motion for Compassionate Release

In 2020, Waithe moved for a sentence modification under 18 U.S.C. § 3582(c)(1)(A), also called *compassionate release*. (Waithe's Mot. for Compassionate Release at 1). He contends that serious medical conditions—"obstructive sleep apnea and morbid obesity"—make him especially vulnerable to the COVID-19 virus. (*Id.* at 3). In brief, Waithe argues that his increased risk of experiencing serious complications if he contracts COVID-19 is an *extraordinary and compelling* reason warranting his release. (*Id.*).

— 2 —

The COVID-19 virus, of course, is now a global pandemic. At MCFP Springfield, three inmates currently have COVID-19, 390 have recovered, and 18 have died. *Coronavirus*, BOP (last visited Feb. 10, 2021).[2]

## II.   LAW & ANALYSIS

The Court recognizes that compassionate release is appropriate for some defendants considering the COVID-19 pandemic. Even so, the defendant bears the burden of showing *not only* that he faces an increased risk from the virus, *but also* that incarceration is no longer necessary to advance the purposes of punishment (i.e., justice, deterrence, incapacitation, and rehabilitation). Waithe failed to meet that burden.

### A.  Legal Standard

District courts generally "may not modify a term of imprisonment once it has been imposed . . . ." 18 U.S.C. § 3582(c). That said, an exception exists for when "extraordinary and compelling reasons warrant such a reduction . . . ." *Id.* § 3582(c)(1)(A)(i). Even then, however, the sentencing judge must still "consider[] the factors set forth in section 3553(a) to the extent that they are applicable . . . ." *Id.* § 3582(c)(1)(A). The burden of proof rests on the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

The § 3553(a) factors are as follows:

(1)   the nature and circumstances of the offense and the history and characteristic of the defendant;

(2)   the need for the sentence imposed—

(A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)   to afford adequate deterrence to criminal conduct;

---

[2]   *Available at* https://www.bop.gov/coronavirus.

   (C) to protect the public from further crimes of the defendant; and

   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

 (3) the kinds of sentences available;

 (4) the kinds of sentence and the sentencing range established for—

   (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . or;

   (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission . . . ;

 (5) any pertinent policy statement—

   (A) issued by the Sentencing Commission . . . ; and

   (B) that . . . is in effect on the date the defendant is sentenced[;]

 (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

 (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

  Similarly, the Bureau of Prisons considers the following nonexclusive factors to determine whether extraordinary and compelling reasons warrant a sentence modification:

- Nature and circumstances of the inmate's offense.

- Criminal history.

- Comments from victims.

- Unresolved detainers.

- Supervised release violations.

- Institutional adjustment.

- Disciplinary infractions.

- Personal history derived from the PSR.

- Length of sentence and amount of time served. . . .

- Inmate's current age.

- Inmate's age at the time of offense and sentencing.

- Inmate's release plans (employment, medical, financial).

- Whether release would minimize the severity of the offense.

Federal Bureau of Prisons, Program Statement No. 5050.50, *Compassionate Release/Reduction in Sentence* (2019).

"The judge need not address every factor 'in checklist fashion, explicitly articulating its conclusions regarding each one.' " *See United States v. Kappes*, 782 F.3d 828, 845 (7th Cir. 2015) (quoting *United States v. Shannon*, 518 F.3d 494, 496 (7th Cir. 2008)). Rather, it is enough to "simply give an adequate statement of reasons, consistent with § 3553(a), for thinking" that a sentence modification is—or is not—appropriate. *See Shannon*, 518 F.3d at 496; *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020) ("[A] district court's discretion in this area—as in all sentencing matters—is broad.").

### B. Exhaustion

Before moving for compassionate release in federal court, criminal defendants must exhaust their administrative remedies with the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). In other words, they must either (1) "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or (2) wait 30 days to lapse "from the receipt of such a request by the warden, whichever is earlier." *Id.* This exhaustion requirement

is a *mandatory claim-processing* rule, meaning that, " '[i]f properly invoked, [it] must be enforced . . . .' " *United States v. Sanford*, — F.3d —, 2021 WL 236622, at *3 (7th Cir. Jan. 25, 2021) (quoting *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 1843, 1849 (2019)). And although the Government was not ordered to respond, the Court must still "conduct a preliminary review to determine whether the motion is facially frivolous or premature." SDIL Fourth Am. Admin. Order 265 (2020).

Waithe alleges that he moved for compassionate release with the warden of MCFP Springfield. (Waithe's Mot. for Compassionate Release at 2–3). This is supported by record evidence showing that the warden denied his motion. (*Id.* at Ex. A). The Court will therefore consider Waithe's administrative remedies exhausted.

### C.  The § 3553(a) Factors

The Court acknowledges the particular danger posed by the COVID-19 pandemic to prisoners, who live in close quarters and often cannot practice social distancing. "But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). The Director of the Bureau of Prisons is in the best position to know which inmates are most vulnerable to infection and whether they still pose a public-safety risk. And since March 2020, BOP has released nearly 8,000 inmates that it has identified as "suitable for home confinement." *Coronavirus*, BOP (last visited Feb. 10, 2021).[3] So although not bound by any BOP determination, the Court "will give the Director's analysis substantial weight . . . ." *See United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020).

---

[3]  *Available at* https://www.bop.gov/coronavirus/.

With that in mind, the § 3553(a) factors weigh against a sentence modification here. The Court is particularly familiar with this case given its recent consideration of Waithe's ancillary request for a sentence reduction. There too, the Court had the discretion to modify Waithe's sentence, but it rejected the opportunity after considering the § 3553(a) factors:

> The Court has reviewed the relevant sentencing factors set forth in 18 U.S.C. § 3553(a) as well as the defendant's pre- and post-conviction conduct, and the circumstances described above. The Court's prior consideration of the § 3553(a) factors explained at sentencing remains valid, and those factors still weigh in favor of a hefty sentence. And while it is true that Waithe has apparently learned to obey prison rules and has taken steps toward his education and employment prospects—all commendable things—they do not overcome his history of affiliation with a violent gang, leadership of extensive drug trafficking operations, and frequent use of guns to facilitate those activities. A further reduction of his sentence runs counter to the need to reflect the seriousness of his offense, to provide just punishment, and to protect the public from his further crimes. His current sentence of 381 months remains sufficient, but not greater than necessary, to serve the purposes of sentencing, and is within the 5 to 40 year statutory sentencing range applicable under the Fair Sentencing Act. Accordingly, the Court will not reduce his term of incarceration. It will, however, reduce his 5-year term of supervised release to a 4-year term in light of the fact that the supervised release range for his conviction is now no less than 4 years rather than no less than 5.

(Mem. & Order at 6) (internal citations omitted). That reasoning remains true here. All the same, the Court agrees that Waithe suffers from serious medical conditions that may make him more vulnerable to the COVID-19 virus. The Court also acknowledges the strides he has made while incarcerated and has re-reviewed the letters of support that were submitted on his behalf at sentencing. Even so, the public has an interest in Waithe's continued incarceration; rehabilitation and incapacitation are only part of the statutory purposes of punishment. Instead, the Court must also consider the severity of the conviction and the threat Waithe's behavior posed to the community. Whereas Waithe may not equate incarceration with justice and deterrence, the Court

recognizes that the promotion of deadly and illicit drugs has lasting effects on people's lives. Further aggravating factors include the fact that Waithe was the ringleader of a criminal organization and was known to carry a firearm. Even given the COVID-19 pandemic, the public interest is weighty. In other words, Waithe's incarceration remains necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to adequately deter criminal conduct from Waithe and others.

### III.    CONCLUSION

The Court **DENIES** Defendant Derek A. Waithe's Motion for Compassionate Release.

**IT IS SO ORDERED.**

**Dated: Wednesday, February 10, 2021**

<u>**S/J. Phil Gilbert**</u>
**J. PHIL GILBERT**
**UNITED STATES DISTRICT JUDGE**